IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANDREW R. REARICK,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　Plaintiff,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　v.　　　　　　　　　　　　　　　)　　Civil Action No. 16-305
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
COMMISSIONER OF SOCIAL SECURITY,　　 )
　　　　　　　　　　　　　　　　　　　)
　　　　　Defendant.　　　　　　　　　)

O R D E R

AND NOW, this 30th day of March, 2017, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 9), filed in the above-captioned matter on July 15, 2016,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 6), filed in the above-captioned matter on June 7, 2016,

IT IS HEREBY ORDERED that said Motion is GRANTED IN PART and DENIED IN PART. Specifically, Plaintiff's Motion is granted to the extent that is seeks remand to the Commissioner of Social Security ("Commissioner") for further evaluation as set forth below, and denied in all other respects. Accordingly, this matter is hereby remanded to the Commissioner for further evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

I. **Background**

On November 24, 2012, Plaintiff Andrew R. Rearick protectively filed a claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., and a claim for supplemental security income under Title XVI of the Social Security Act, 42

U.S.C. §§ 1381 et seq. Specifically, Plaintiff claimed that he became disabled on July 1, 2012, due to bipolar disorder, Aspberger's syndrome, anxiety, microscopic colitis, IBS, ADD and reading comprehension difficulties. (R. 205).

After being denied initially on March 5, 2013, Plaintiff sought, and obtained, a hearing before an Administrative Law Judge ("ALJ") on June 18, 2014. (R. 37-90). In a decision dated August 4, 2014, the ALJ denied Plaintiff's request for benefits. (R. 19-36). The Appeals Council declined to review the ALJ's decision on March 8, 2016. (R. 1-4). Plaintiff filed a timely appeal with this Court, and the parties have filed cross-motions for summary judgment.

## II. **Standard of Review**

Judicial review of a social security case is based upon the pleadings and the transcript of the record. See 42 U.S.C. § 405(g). The scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. See Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001) (noting that "'[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive'" (quoting 42 U.S.C. § 405(g))); Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999) (stating that the court has plenary review of all legal issues, and reviews the ALJ's findings of fact to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate'" to support a conclusion. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)). However, a "'single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.'"

2

Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). "'Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.'" Id.

A disability is established when the claimant can demonstrate some medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period. See Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'" Id. at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability as defined by the Act. See 20 C.F.R. §§ 404.1520, 416.920. In Step One, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. See 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If so, the disability claim will be denied. See Bowen v. Yuckert, 482 U.S. 137, 140 (1987). If not, the second step of the process is to determine whether the claimant is suffering from a severe impairment. See 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1522, 416.922. If the claimant fails to show that his or her impairments are "severe," he or she is ineligible for disability benefits. If the claimant does have

a severe impairment, however, the Commissioner must proceed to Step Three and determine whether the claimant's impairment meets or equals the criteria for a listed impairment. See 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If a claimant meets a listing, a finding of disability is automatically directed. If the claimant does not meet a listing, the analysis proceeds to Steps Four and Five.

Step Four requires the ALJ to consider whether the claimant retains the residual functional capacity ("RFC") to perform his or her past relevant work, see 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv), and the claimant bears the burden of demonstrating an inability to return to this past relevant work, see Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume his or her former occupation, the evaluation then moves to the fifth and final step.

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability. See 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the ALJ should consider the claimant's RFC, age, education, and past work experience. See id. The ALJ must further analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. See 20 C.F.R. §§ 404.1523, 416.923.

### III. The ALJ's Decision

In the present case, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since July 1, 2012. (R. 24). The ALJ also found that Plaintiff met the second requirement of the process insofar as he had certain severe impairments, specifically, microscopic colitis, bipolar disorder, schizoaffective disorder, panic disorder with agoraphobia,

social phobia, and autism. (R. 24). The ALJ further concluded that Plaintiff's impairments did not meet any of the listings that would satisfy Step Three. (R. 25).

The ALJ next found that Plaintiff retained the RFC to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), except that he may not perform tandem tasks and is limited to no more than occasional interaction with coworkers. (R. 26). At Step Four, the ALJ found that Plaintiff is unable to perform any past relevant work, and he moved on to Step Five. (R. 30). The ALJ then used a vocational expert ("VE") to determine whether or not a significant number of jobs existed in the national economy that Plaintiff could perform. The VE testified that, based on Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy, such as industrial cleaner, cleaner/housekeeper, and hand packer. (R. 31, 86-87). Accordingly, the ALJ found that Plaintiff was not disabled. (R. 31-32).

## IV. Legal Analysis

Plaintiff raises several arguments as to why he believes that the ALJ erred in finding him to be not disabled. While the Court does not fully agree with the arguments set forth by Plaintiff, it does agree that remand is warranted in this case. Specifically, because the Court finds that the ALJ did not properly explain his reasoning in assessing Plaintiff's credibility as to his allegations of physical impairments—an assessment upon which the ALJ relied in formulating his RFC—the Court cannot find that Plaintiff's RFC is supported by substantial evidence. Accordingly, the Court will remand the case for further consideration.

RFC is defined as "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" Fargnoli, 247 F.3d at 40 (quoting Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000)); see also 20 C.F.R. § 404.1545(a). Not only

must an ALJ consider all relevant evidence in determining an individual's RFC, the RFC finding "must 'be accompanied by a clear and satisfactory explication of the basis on which it rests.'" Fargnoli, 247 F.3d at 41 (quoting Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)). "'[A]n examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision.'" Id. (quoting Cotter, 642 F.2d at 705); see also SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).").

In formulating Plaintiff's RFC, the ALJ determined that, after considering all of the evidence, Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (R. 29). The ALJ failed, however, to provide an adequate explanation of how he reached his conclusions regarding the credibility of Plaintiff's allegations of physical impairments.

For example, the ALJ first stated generally that the evidence of record fails to support fully Plaintiff's allegations of physical disability. (R. 29). The ALJ then reviewed Plaintiff's testimony, including his alleged history of colitis, noting that it has apparently been worsening since 2012. (R. 29). The ALJ also stated that Plaintiff testified to experiencing constant pain (characterized as 5-10/10 in intensity), 6-10 bowel movements per day with each movement lasting approximately 30 minutes, episodic fecal incontinence, and fatigue and somnolence as side effects of his medication. (R. 29).

6

The ALJ then discussed certain documentary evidence of record, noting Plaintiff's diagnosis of microscopic colitis in approximately 2010, his medical visits for gastrointestinal difficulties, and the various medical tests that have consequently been performed. (R. 29). For example, Plaintiff underwent a colonoscopy performed by Krysia L. Zancosky, D.O., in January 2013. (R. 29, 308-09). The surgical pathology report indicates that Plaintiff's pre-op diagnosis was microscopic colitis, diarrhea, and rectal bleeding. (R. 310). The record shows that the resulting biopsy indicated mild microscopic colitis (R. 29, 310). The record also indicates that Plaintiff had a cholecystectomy in 2013, but that he does not recall if his bowel movements improved after the procedure. (R. 29, 554).

The record further reveals that Plaintiff visited the gastroenterologists' office in July 2013 for a recheck of colitis, complaining of abdominal pain accompanied by 8-10 bowel movements per day, chronic loose stools and occasional bleeding. (R. 29, 523). That same month, Plaintiff underwent an abdominal ultrasound, which appeared normal, and an abdominal computerized tomography (CT) scan, which showed mild mural thickening of the sigmoid colon and slight engorgement of the adjacent vasa recta, raising the possibility of sigmoid colitis. (R. 29, 460, 472). A hepatobiliary scan from July 2013 showed a slightly decreased gallbladder ejection fraction, while a panendoscopy conducted in August 2013 showed no significant findings to explain Plaintiff's symptoms. (R. 29, 417-18, 441). Biopsies from August 2013 showed increased chronic inflammation in the small bowel and chronic gastritis. (R. 515). At that point, Dr. Zancosky's records indicate that, although Plaintiff was then on Entocort for his diarrhea, she was considering adding Questran if his diarrhea continued. (R. 418).

In January 2014, Plaintiff presented for a recheck of diarrhea, and the office records indicate that his symptoms had been associated with abdominal pain and that he continued to

7

have diarrhea as he had for 4 years, including 8-10 bowel movements daily. (R. 554-56). The records further indicate that Plaintiff was to continue his current Entocort dose, that Questran would be added, and that, if this regimen was ineffective, his doctors would consider stopping his Enocort and switching him to Lialda. (R. 556).

Despite this evidence of Plaintiff's treatment over the course of just a few years, the ALJ nonetheless found that the record reflected "comparatively infrequent treatment" for Plaintiff's gastrointestinal difficulties. (R. 29). The ALJ then cursorily concluded that, "[i]n view of the foregoing, I find that the claimant is limited to work at the medium exertional level." (R. 29). The Court notes that Plaintiff appears to have received a considerable amount of treatment, including quite a few medical tests, for his gastrointestinal issues. Thus, the Court finds that the ALJ's questionable comment that the record reflects "infrequent" treatment is inappropriate here. Additionally, it is unclear to the Court precisely what the ALJ was comparing Plaintiff's treatment to when he described it as being "comparatively" infrequent. While the ALJ is certainly permitted to find Plaintiff's allegations of physical impairment to be less than credible, the Court finds that the ALJ's justification for his finding is simply unclear and lacking in specificity here.

The Court thus finds that the ALJ's explanation of his assessment of Plaintiff's credibility is insufficient in this case. The Court also finds that the ALJ's unclear explanation calls into question the appropriateness of his credibility finding, and the RFC formulated by the ALJ is, therefore, not supported by substantial evidence. Thus, remand is required to allow for further discussion as to the ALJ's assessment of Plaintiff's credibility and his corresponding formulation of Plaintiff's RFC.

Additionally, although the Court takes no position as to Plaintiff's remaining issues, the ALJ should, of course, ensure that proper weight be accorded to the various opinion and medical evidence presented in the record, and he should verify that his conclusions concerning Plaintiff's RFC are fully explained, in order to eliminate the need for any future remand.

**V.     Conclusion**

In short, because the ALJ failed to provide an adequate explanation for his credibility assessment, upon which he relied in ultimately determining Plaintiff's RFC, the Court finds that substantial evidence does not support the ALJ's decision in this case. The Court hereby remands this case to the ALJ for reconsideration consistent with this Order.

s/ Alan N. Bloch
United States District Judge

ecf:	Counsel of record